UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

PEGGY ANN RICHARDSON,

                    Plaintiff,

     v.

MICHAEL J. ASTRUE, Commissioner of
Social Security,

                  Defendant.

Case No. 3:10-cv-05801-KLS

ORDER REVERSING DEFENDANT'S
DECISION TO DENY BENEFITS AND
REMANDING FOR FURTHER
ADMINISTRATIVE PROCEEDINGS

Plaintiff has brought this matter for judicial review of defendant's denial of her

application for disability insurance benefits. Pursuant to 28 U.S.C. § 636(c), Federal Rule of

Civil Procedure 73 and Local Rule MJR 13, the parties have consented to have this matter heard

by the undersigned Magistrate Judge. After reviewing the parties' briefs and the remaining

record, the Court hereby finds that for the reasons set forth below, defendant's decision should

be reversed and this matter should be remanded for further administrative proceedings.

FACTUAL AND PROCEDURAL HISTORY

On August 22, 2007, plaintiff filed an application for disability insurance benefits,

alleging disability as of April 1, 2005, due to a hearing impairment, eye problems, an anxiety

ORDER - 1

disorder, diabetes, and a heart condition. See Administrative Record ("AR") 8, 172, 188.[1] Her

application was denied upon initial administrative review and on reconsideration. See AR 8, 106,

113, 116. A hearing was held before an administrative law judge ("ALJ") on September 28,

2009, at which plaintiff, represented by counsel, appeared and testified. See AR 24-63. On

February 8, 2010, a supplemental hearing was held before the same ALJ, at which plaintiff,

again represented by counsel, appeared and testified, as did a vocational expert. See AR 64-90.

On March 18, 2010, the ALJ issued a decision in which he determined plaintiff to be not

disabled. See AR 8-18. The ALJ also declined to grant plaintiff's request to re-open the prior

applications. See AR 8. Plaintiff's request for review of the ALJ's decision was denied by the

Appeals Council on September 8, 2010, making the ALJ's decision defendant's final decision.

See AR 1; see also 20 C.F.R. § 404.981. On November 2, 2010, plaintiff filed a complaint in

this Court seeking judicial review of the ALJ's decision. See ECF #1-#3. The administrative

record was filed with the Court on January 19, 2011. See ECF #10. The parties have completed

their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues the ALJ's decision should be reversed and remanded to defendant for an

award of benefits or in the alternative for further administrative proceedings, because the ALJ

erred: (1) in evaluating the medical evidence in the record; (2) in assessing plaintiff's credibility;

(3) in assessing her residual functional capacity; and (4) in finding her to be capable of

performing other work existing in significant numbers in the national economy. The Court

agrees the ALJ erred in determining plaintiff to be not disabled, but, for the reasons set forth

below, finds that while the ALJ's decision should be reversed, this matter should be remanded to

---

[1] Plaintiff filed prior applications for disability insurance and supplemental security income ("SSI") benefits on August 24, 2006. See AR 8, 158. Her application for disability insurance benefits was denied upon initial administrative review, and her SSI benefits application was denied both upon initial administrative review and on reconsideration. See AR 8, 103. It does not appear that those applications were pursued any further.

ORDER - 2

defendant for further administrative proceedings.

DISCUSSION

This Court must uphold defendant's determination that plaintiff is not disabled if the proper legal standards were applied and there is substantial evidence in the record as a whole to support the determination. See Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. See Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the Court must uphold defendant's decision. See Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

I.      Plaintiff's Date Last Insured

To be entitled to disability insurance benefits, plaintiff "must establish that her disability existed on or before" the date her insured status expired. See Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998); Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1460 (9th Cir. 1995) (social security statutory scheme requires disability to be continuously disabling from time of onset during insured status to time of application for benefits, if individual applies for benefits for current disability after expiration of insured status). Plaintiff's date last insured was March 31, 2007. See AR 10. Thus, to be entitled to disability insurance benefits, plaintiff must establish she was disabled prior to or as of that date. See Tidwell, 161 F.3d at 601.

II.     The ALJ's Evaluation of the Medical Evidence in the Record

The ALJ is responsible for determining credibility and resolving ambiguities and

ORDER - 3

conflicts in the medical evidence.  See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998).

Where the medical evidence in the record is not conclusive, "questions of credibility and

resolution of conflicts" are solely the functions of the ALJ.  Sample v. Schweiker, 694 F.2d 639,

642 (9th Cir. 1982).  In such cases, "the ALJ's conclusion must be upheld."  Morgan v.

Commissioner of the Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999).  Determining

whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at

all) and whether certain factors are relevant to discount" the opinions of medical experts "falls

within this responsibility."  Id. at 603.

       In resolving questions of credibility and conflicts in the evidence, an ALJ's findings

"must be supported by specific, cogent reasons."  Reddick, 157 F.3d at 725.  The ALJ can do this

"by setting out a detailed and thorough summary of the facts and conflicting clinical evidence,

stating his interpretation thereof, and making findings."  Id.  The ALJ also may draw inferences

"logically flowing from the evidence."  Sample, 694 F.2d at 642.  Further, the Court itself may

draw "specific and legitimate inferences from the ALJ's opinion."  Magallanes v. Bowen, 881

F.2d 747, 755, (9th Cir. 1989).

       The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted

opinion of either a treating or examining physician.  Lester v. Chater, 81 F.3d 821, 830 (9th Cir.

1996).  Even when a treating or examining physician's opinion is contradicted, that opinion "can

only be rejected for specific and legitimate reasons that are supported by substantial evidence in

the record."  Id. at 830-31.  However, the ALJ "need not discuss *all* evidence presented" to him

or her.  Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984)

(citation omitted) (emphasis in original).  The ALJ must only explain why "significant probative

evidence has been rejected."  Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981);

ORDER - 4

Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. See Lester, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson v. Commissioner of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); see also Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

A.    Dr. Covell

In late November 2009, Christmas Covell, Ph.D., issued a psychological evaluation report based on an examination of plaintiff she conducted in early November 2009. See AR 422-32. Dr. Covell completed a medical source statement of ability to do mental work-related activities also in late November 2009. See AR 433-35. With respect to Dr. Covell's findings and opinions, the ALJ found in relevant part as follows:

> Dr. Covell's opinions as to the claimant's mental impairments are given the most weight because only Dr. Covell conducted a [Test of Memory Malingering ("]TOMM["]) to assess the claimant's credibility. . . . [T]he results of this test indicate that the claimant may not have given her best effort during the examination of her cognitive abilities. While there are only modest amounts of medical evidence to show the existence and severity of the claimant's mental impairments prior to her date last insured, the undersigned will use . . . Dr. Covell's later diagnoses to infer that these ailments could have existed prior to March 31, 2007[, the claimant's date last insured].
>
> Despite her suspicions, Dr. Covell diagnosed the claimant with three mental disorders [(an anxiety disorder, a dysthymic disorder and a personality

ORDER - 5

disorder)], and rated the claimant's [global assessment of functioning ("]GAF["]) score in the 55-64 range[2] (Ex. 16F, p. 10). According to Dr. Covell the claimant is able to understand, remember and carry out simple two and three step instructions and but [sic] is limited from making judgments on complex tasks (Ex. 16F, p. 10). However, the evidence does not show that any of the claimant's mental impairments prevented her from holding a job, and Dr. Covell concludes that the claimant's cognitive functioning does not significantly impact her ability to work (Ex. 16F, p. 10).

AR 16; see also AR 430-31. Plaintiff argues the ALJ failed to adopt all of the mental functional limitations assessed by Dr. Covell, even though the ALJ stated he was giving the most weight to Dr. Covell's evaluation. The Court agrees.

In assessing plaintiff's residual functional capacity ("RFC") – discussed in greater detail below – the ALJ found in relevant part that:

> **. . . She has average ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis within customary tolerances of employers' rules regarding sick leave and absence. The claimant can also make judgments on simple work-related decisions. She can respond appropriately to supervision, coworkers, and work situations and deal with change within a routine work setting. Incidental contact with the public is not precluded.**

AR 13 (emphasis in original). Plaintiff asserts, though, that this assessment does not include all of the limitations assessed by Dr. Covell. For example, plaintiff notes Dr. Covell also opined in relevant part as follows:

> . . . She demonstrates limitations in judgment and a tendency to become easily overwhelmed by and cope with stressors poorly, suggesting moderate to marked difficulty in her ability to make complex judgments and decisions, and

---

[2] A GAF score is "a subjective determination based on a scale of 100 to 1 of 'the [mental health] clinician's judgment of [a claimant's] overall level of functioning.'" Pisciotta v. Astrue, 500 F.3d 1074, 1076 n.1 (10th Cir. 2007). It is "relevant evidence" of the claimant's ability to function mentally. England v. Astrue, 490 F.3d 1017, 1023, n.8 (8th Cir. 2007). "A GAF of 51-60 indicates '[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers).'" Tagger v. Astrue, 536 F.Supp.2d 1170, 1173 n.6 (C.D.Cal. 2008) (quoting American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* ("DSM-IV") (4th ed. 1994) at 34). "A GAF score of 61-70 reflects mild symptoms or "some difficulty [in social, occupational, or school functioning], but the individual 'generally function[s] pretty well.'" Sims v. Barnhart, 309 F.3d 424, 427 n.5 (7th Cir. 2002) (quoting DSM-IV at 30).

ORDER - 6

> to tolerate stress and change. Ms. Richardson appears to engage in regular
> conflicts with others and to be sensitive to criticism, and may accordingly
> have moderate difficulty working cooperatively with supervisors and a small
> group of coworkers, with more marked difficulty anticipated in her ability to
> work with a large group of coworkers or the public.

AR 431. Plaintiff argues the ALJ's statement that she can respond appropriately to supervision,

coworkers and work situations and could deal with change, is not consistent with the moderate to

marked difficulties in tolerating stress and change and in working with supervisors.

Defendant argues the ALJ accounted for the difficulties in dealing with stress and change

found by Dr. Covell, by restricting plaintiff to being able to perform no more than simple work-

related tasks. But the Court agrees with plaintiff that a restriction to simple work-related tasks is

not at all synonymous with moderate to marked difficulties in dealing with stress or change, or

that such tasks necessarily takes into account the latter restriction. Indeed, as pointed out by

plaintiff, defendant's own rulings recognize the impact that an individual's ability to deal with

stress – apart from that individual's ability to perform specific work-related tasks – may have on

his or her capability of performing those tasks. <u>See</u> Social Security Ruling ("SSR") 85-15, 1985

WL 56857.[3] Thus, the ALJ erred in not taking into account the difficulties Dr. Covell found

---

[3] That ruling provides in relevant part:

> <u>Stress and Mental Illness</u>--Since mental illness is defined and characterized by maladaptive
> behavior, it is not unusual that the mentally impaired have difficulty accommodating to the
> demands of work and work-like settings. Determining whether these individuals will be able
> to adapt to the demands or "stress" of the workplace is often extremely difficult. . . .
>
> . . .
>
> The reaction to the demands of work (stress) is highly individualized, and mental illness is
> characterized by adverse responses to seemingly trivial circumstances. The mentally
> impaired may cease to function effectively when facing such demands as getting to work
> regularly, having their performance supervised, and remaining in the workplace for a full day.
> A person may become panicked and develop palpitations, shortness of breath, or feel faint
> while riding in an elevator; another may experience terror and begin to hallucinate when
> approached by a stranger asking a question. Thus, the mentally impaired may have difficulty
> meeting the requirements of even so-called "low-stress" jobs.

ORDER - 7

plaintiff may have in her ability to deal with stress and change, or at least in not explaining why he did not adopt that limitation.

As for the moderate to marked difficulties in working with supervisors and co-workers, defendant argues that because Dr. Covell also stated plaintiff's difficulties in this area "may be managed by limiting [her] requirement for regular or significant engagement with coworkers" (AR 431), such difficulties are not inconsistent with the ALJ's statement that she could respond appropriately to co-workers. But a limitation on regular or significant contact with co-workers necessarily is more restrictive than the ability to respond appropriately thereto. That is, there is no indication in the ALJ's assessment of plaintiff's residual functional capacity that he believed plaintiff had any restrictions on her ability to work with others. Nor does this explanation, to the extent it has any validity, take into account the difficulties Dr. Covell found she also had in her ability to work cooperatively with supervisors.

The Court also does not find persuasive defendant's assertion that there is nothing in the descriptions contained in the Dictionary of Occupational Titles ("DOT") of the jobs identified by the vocational expert at the hearing that plaintiff could still do, to suggest plaintiff would be in a position where she would have to work with others. Ignoring the fact that this does not take into account Dr. Covell's limitations relating to dealing with stress and change, it is difficult to argue that moderate to marked difficulties in the ability to work cooperatively with supervisors and co-

---

> Because response to the demands of work is highly individualized, the skill level of a position is not necessarily related to the difficulty an individual will have in meeting the demands of the job. A claimant's condition may make performance of an unskilled job as difficult as an objectively more demanding job. [F]or example, . . . an individual who cannot tolerate being supervised may not be able to work even in the absence of close supervision; the *knowledge* that one's work is being judged and evaluated, even when the supervision is remote or indirect, can be intolerable for some mentally impaired persons. Any impairment-related limitations created by an individual's response to demands of work, however, must be reflected in the RFC assessment.

See id. at *5-6 (emphasis in original).

ORDER - 8

workers does not constitute a significant non-exertional limitation in any job – given that almost any job, even those in which the particular individual would not have to deal significantly with supervisors or co-workers, likely would involve at least some contact therewith – in which case the testimony of a vocational expert would be required. See Reddick, 157 F.3d at 729 (because claimant had significant non-exertional limitations, testimony of vocational expert was required). No testimony from the vocational expert at the hearing, though, was provided in this regard, or to the extent that it was, it tends to indicate a decrease in the ability to perform other jobs, although that testimony was not definitive on this issue. See AR 87-88.

On the other hand, the Court disagrees with plaintiff that the ALJ's finding that incidental public contact was not precluded, is inconsistent with the assessment of Dr. Covell that she had marked difficulties in dealing with the public. See AR 431. On the medical source statement of ability to do work-related mental activities Dr. Covell completed at the same time she issued her evaluation report – and in which she also indicated plaintiff had a marked limitation in her ability to interact appropriately with the public – a "marked" limitation means the ability to function in the particular area "is severely limited *but not precluded*." AR 433 (emphasis added). Further, there is no indication in the evaluation report she completed, that Dr. Covell was not intending to adopt this definition of the term "marked". The Court, therefore, finds the ALJ's determination to limit plaintiff to incidental public contact was not unreasonable here.[4]

B.    Dr. Oyemaja

A psychological/psychiatric evaluation form was completed by Julie Oyemaja, Psy.D., in

---

[4] Indeed, plaintiff provides no argument or explanation as to why she believes such was not reasonable on the ALJ's part. See Carmicle v. Commissioner of Social Sec. Admin., 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (issue not argued with specificity will not be addressed); Paladin Associates., Inc. v. Montana Power Co., 328 F.3d 1145, 1164 (9th Cir. 2003) (by failing to make argument in opening brief, objection to court's order was waived); Kim v. Kang, 154 F.3d 996, 1000 (9th Cir.1998) (matters not specifically and distinctly argued in opening brief ordinarily will not be considered).

late August 2009, in which she found plaintiff to be moderately to severely impaired in a number of areas of mental functioning, based on diagnoses of a cognitive disorder and a panic disorder with agoraphobia, as well as dependant personality traits and a rule out diagnosis of dementia due to multiple causes. See AR 334-42. Plaintiff argues the ALJ erred by ignoring the findings of Dr. Oyemaja. Once more, the Court agrees. Defendant argues the ALJ found Dr. Covell's findings deserved the most weight, because Dr. Covell conducted psychological testing to assess plaintiff's credibility, and thus found those from Dr. Oyemaja deserved less weight as she did not have the benefit of such testing. But nothing in the ALJ's decision indicates this is what he did. Indeed, there is no indication the ALJ actually considered Dr. Oyemaja's evaluation report, as he did not mention it at all. Lastly, as discussed above, the ALJ did not properly take into account all of the mental functional limitations found by Dr. Covell.

III.     The ALJ's Assessment of Plaintiff's Credibility

Questions of credibility are solely within the control of the ALJ. See Sample, 694 F.2d at 642. The Court should not "second-guess" this credibility determination. Allen, 749 F.2d at 580. In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. See id. at 579. That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence. Tonapetyan , 242 F.3d at 1148.

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." Lester, 81 F.3d at 834 (citation omitted). The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." Id.; see also Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence shows the

claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." Lester, 81 F.2d at 834. The evidence as a whole must support a finding of malingering. See O'Donnell v. Barnhart, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. See id.

The ALJ discounted plaintiff's credibility in part for the following reason:

. . . During the consultative examination performed in November 2009, Dr. Covell noted that the claimant gave accounts of historical experiences and symptoms that were "highly improbable" (Ex. 16F, p. 2). Dr. Covell felt that the claimant's improbable allegations made some portions of her personal history account dubious (Ex. 16F, p. 2).

Dr. Covell also raised concerns about the claimant's effort during tests of cognitive ability. Dr. Covell observed that the claimant's mental status performance may have been affected by reduced effort by the claimant during the examination (Ex. 16F, p. 6-7). The claimant's Working Memory Index and Processing Speed Index scores were much lower than her Verbal Comprehension Index scores, a significant and unusual result that led to further testing. Dr. Covell then calculated the claimant's General Ability Index score, and found that it had a seven point discrepancy from her Full Scale Intelligence Quotient score. Again, this is an unusual result that occurs only eight percent of the time (Ex. 16F, p. 8-9). Dr. Covell also observed that the claimant's Test of Memory Malingering (TOMM) scores indicated that the claimant may not have given her best effort during the testing process. In particular, her Trial 1 and Retention Trial scores were much lower than expected. According to Dr. Covell, these results raise doubts about the results of the other tests conducted with the claimant (Ex. 16F, p. 9). Dr. Covell concluded that the claimant's actual cognitive ability is likely higher than tests indicate due to the claimant's poor effort in completing test tasks (Ex. 16F, p. 10).

AR 14. Plaintiff argues this is not a valid reason for discounting her credibility, asserting further

ORDER - 11

explanation for the testing results and bases therefor should have been provided by Dr. Covell. But the Court finds nothing ambiguous or inadequate about those results, nor is there anything in the record to indicate Dr. Covell was not qualified to properly interpret them. The Court further rejects plaintiff's contention that the ALJ should have considered her history of encephalitis and her mild anxiousness during cognitive testing here, but there is no indication Dr. Covell believed these factors had any impact on her performance on the TOMM. As such, the ALJ did not err in discounting plaintiff's credibility for this reason.

Plaintiff goes on to argue that it is notable that while the TOMM is a test for malingering, Dr. Covell did not actually diagnose malingering. The Court does find the test results obtained by Dr. Covell do not constitute "affirmative" evidence of malingering, given that, as pointed out by plaintiff, she went on to state that the reasons for her "poor effort were not clear," and that "a more comprehensive evaluation . . . may provide greater clarification."[5] AR 431. Nevertheless, it was still proper for the ALJ to rely on Dr. Covell's test results and comments regarding poor effort and "highly improbable" historical accounts to discount plaintiff's credibility in general, even if it was not entirely clear to Dr. Covell exactly why she gave such poor effort or provided such accounts. See Smolen, 80 F.3d at 1284 (ordinary techniques of credibility evaluation may

---

[5] Defendant argues no definitive diagnosis of malingering is required, but merely that there be affirmative evidence suggesting the presence of such. The Court agrees that no actual diagnosis of malingering is required for the ALJ or the Court to find affirmative evidence thereof. See Carmickle, 533 F.3d at 1160 n.1 (noting that "the statement in *Robbins v. Social Security Administration*, 466 F.3d 880, 883 (9th Cir.2006), suggesting that the ALJ must make a specific *finding* of malingering before the clear-and-convincing-reasons standard applies is an anomaly in this Circuit's caselaw.") (emphasis in original). However, the important point is that there must be *affirmative evidence* of malingering. See Valentine v. Commissioner Social Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009) (requiring "affirmative evidence showing that the claimant is malingering") (citing Morgan, 169 F.3d at 599); Carmickle, 533 F.3d at 1160 (only time clear and convincing standard does not apply "is when there is affirmative evidence that the claimant is malingering"); Lester, 81 F.3d at 834 ("Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be 'clear and convincing.'") (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989) (there must evidence that "affirmatively suggests that the claimant was malingering")). Here, given Dr. Covell's statement that the reasons for plaintiff's poor effort were "not clear," the Court finds such evidence to be lacking in this case.

be considered); <u>Allen</u>, 749 F.2d at 579 (credibility determination may not be reversed where it is based on ambiguous evidence).

The ALJ further discounted plaintiff's credibility due to her "unwillingness to cooperate with requests from the Social Security Administration for information that would help her case," by failing "to respond to two letters requesting more information" after the initial administrative denial of her application for disability benefits. AR 14. Here too, the ALJ was not unreasonable in discounting plaintiff's credibility based on her failure to cooperate in the disability evaluation process. Plaintiff disagrees, arguing the ALJ should have taken into consideration her level of intellectual functioning as evidence by her IQ of 75. Again, however, there is no indication that this had any impact on plaintiff's ability to respond to the information requests. Plaintiff further contends there is no evidence in the record that she understood the nature and significance of the requests or that she intentionally failed to respond to them. But the opposite is equally true – that is there is no evidence that she did *not* understand the nature and significance thereof or that she did *not* intend to respond thereto – and therefore the Court will not reverse the ALJ's credibility determination on this basis. <u>See</u> <u>Allen</u>, 749 F.2d at 579.

The ALJ also discounted plaintiff's credibility because:

The claimant's approach towards treating her mental health ailments also indicates that they are not as severe as she alleges. During the consultative exam she stated that she only sought mental health treatment at Greater Lakes Mental Health (GLMH) when [the Washington State Department of Social and Health Services ("]DSHS["]) threatened to cut off benefits (Ex. 16F, p. 3). When she reported to GLMH for treatment in November of 2009, she claimed to have never received mental health treatment before (Ex. 17F, p. 3). If her symptoms were as severe as she has described, with panic attacks and depression going back to the 1970s, it seems unlikely that she would have avoided treatment for this long. The claimant's propensity to only seek help for her mental health conditions when she is forced to indicates that it is not as severe as she claims.

Furthermore, while the claimant's medical record does show that she has

sought treatment for several physical ailments since her alleged onset date, she has not actively sought treatment for mental ailments. The claimant states that her primary care physician prescribed Zoloft to treat her panic attacks, but she does not consistently take it (Ex. 16F, p. 3-4 and Ex. 13F, p. 16).

During the consultative examination Dr. Covell diagnosed the claimant with anxiety disorder. The claimant has stated that the panic attacks are a daily occurrence, and have been for many years. However, according to Dr. Covell the claimant's condition can be controlled through treatment and medication (Ex. 16, p. 10). The claimant can reduce the effects of this impairment in a workplace environment by limiting her exposure to coworkers and the general public (Ex. 16F, p. 10). Furthermore, the claimant has worked at substantial gainful activity levels in the past despite the presence of her panic disorder. Therefore, this impairment does not prevent the claimant from working.

AR 15. These are all valid reasons for discounting plaintiff's credibility. See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) (upholding ALJ in discounting claimant's credibility in part due to lack of consistent treatment, and noting that fact that claimant's pain was not sufficiently severe to motivate her to seek treatment, even if she had sought some treatment, was powerful evidence regarding extent to which she was in pain); Meanal v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (ALJ properly considered failure to request serious medical treatment for supposedly excruciating pain); Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) (failure to assert good reason for not seeking treatment can cast doubt on claimant's sincerity); see also Morgan, 169 F.3d at 599 (credibility may be discounted on basis of medical improvement); Tidwell, 161 F.3d at 601 (same); Smolen, 80 F.3d at 1284 (ALJ may consider claimant's work record).

Plaintiff argues the ALJ's findings regarding the lack of consistent treatment fails to take into account evidence in the record indicating that she lacked health insurance coverage and that she had a fear of treatment. It is true that an ALJ "must not draw any inferences" concerning a claimant's symptoms and their functional effects from such a failure, "without first considering any explanations" that the claimant "may provide, or other information in the case record, that may explain" that failure. Social Security Ruling ("SSR") 96-7p, 1996 WL 374186 *7; see also

ORDER - 14

Gamble v. Chater, 68 F.3d 319, 321 (9th Cir. 1995) (benefits may not be denied due to failure to obtain treatment because of inability to afford it). But, as pointed out by the ALJ, there is also evidence in the record that plaintiff only sought mental health treatment once she was forced to in order to continue to receive benefits. Given such evidentiary conflicts, once more the Court will not reverse the ALJ's findings here, particular given that the ALJ's interpretation thereof is entirely reasonable. See Allen, 749 F.2d at 579.

Plaintiff argues it is improper to discount the credibility of a claimant who has a mental impairment on the basis of his or her failure to seek treatment therefor. See Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996) (noting that those with depression often do not recognize their condition reflects potentially serious mental illness); see also Blankenship v. Bowen, 874 F.2d 1116, 1124 (6th Cir.1989) (invalidating ALJ's rejection of claimant's assertions regarding depression for failure to seek psychiatric treatment, finding it questionable to chastise one with mental impairment for exercise of poor judgment in seeking rehabilitation). Here again, though, it was not unreasonable based on the evidence in the record, to find the reason plaintiff did not seek treatment earlier was because she was threatened with loss of her benefits, and not because of lack of affordability or fear.

The ALJ also discounted plaintiff's credibility in part on the basis that she "testified at the hearing that she primarily lived on Social Security benefits received by her children during their youth," which raised the issue of secondary gain motives. AR 14-15. It is true that the ALJ may consider the issue of secondary gain in discounting a claimant's testimony. See Tidwell, 161 F.3d at 602 (9th Cir. 1998); Matney on Behalf of Matney v. Sullivan, 981 F.2d 1016, 1020 (9th Cir. 1992). Here, however, there is no evidence that plaintiff's receipt of such benefits was not appropriate. Nor does the Court find the receipt of disability or other types of benefits in itself

ORDER - 15

constitutes evidence of improper motives. As such, the Court finds the ALJ erred in discounting

plaintiff's credibility on this basis.

Lastly, the ALJ discounted plaintiff's credibility in part for the following reason:

> The claimant's activities of daily living . . . indicate that she does not have a
> disability. During the consultative examination, the claimant told Dr. Covell
> that she is able to handle grooming and personal hygiene properly. She can
> shop for food and other household items independently and without difficulty,
> and can prepare her own food. She is able to use public transit to go to the
> store or run other errands (Ex. 16F, p. 7). She claims to have some difficulty
> finishing household chores, but expresses hope that medication will help her
> stay organized (Ex. 16F, p. 7).

AR 15. In determining whether a claimant is credible, the ALJ may consider that claimant's

daily activities. Smolen, 80 F.3d at 1284. The Ninth Circuit has recognized "two grounds for

using daily activities to form the basis of an adverse credibility determination." Orn v. Astrue,

495 F.3d 625, 639 (9th Cir. 2007).

First, a claimant's daily activities can "meet the threshold for transferable work skills."

Smolen, 80 F.3d at 1284  Such testimony may be rejected, though, only if the claimant "is able to

spend a substantial part of his or her day performing household chores or other activities that are

transferable to a work setting." Id. at 1284 n.7. However, the claimant need not be "utterly

incapacitated" to be eligible for disability benefits, and "many home activities may not be easily

transferable to a work environment." Id. Second, a claimant's daily activities can "contradict his

[or her] other testimony." Orn, 495 F.3d at 639.

Neither of these grounds is applicable here. First, the record fails to show the activities

plaintiff engaged in are of the type that is transferrable to a work setting or, if they are, that she

spent a substantial part of her day performing them. See 48, 52-53, 61-62, 80-81, 428. Nor do

the activities described in the record contradict her other testimony. Therefore, this reason for

discounting plaintiff's credibility too was improper. Nevertheless, the fact that the last two of

ORDER - 16

the above reasons the ALJ gave for discounting plaintiff's credibility were not legitimate does not render the overall credibility determination invalid in this case, since that determination is supported by substantial evidence in the record on the whole for the other valid reasons set forth above. Tonapetyan, 242 F.3d at 1148.

IV.     The ALJ's Assessment of Plaintiff's Residual Functional Capacity

Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920. If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. See id. If a disability determination "cannot be made on the basis of medical factors alone at step three of the evaluation process," the ALJ then must identify the claimant's "functional limitations and restrictions" and assess that claimant's "remaining capacities for work-related activities." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 *2.

A claimant's residual functional capacity assessment is used at step four of the sequential disability evaluation process to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. See id. It thus is what the claimant "can still do despite his or her limitations." Id. A claimant's RFC is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. See id. However, an inability to work must result from the claimant's "physical or mental impairment(s)." Id. Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id. In assessing a claimant's residual functional capacity, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the

ORDER - 17

medical or other evidence." <u>Id.</u> at *7.

The ALJ in this case found plaintiff had the residual functional capacity:

**. . . [T]o perform a full range of work at all exertional levels but with several nonexertional limitations. The claimant can understand, remember and carry out simple two – three step instructions. She has average ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis within customary tolerances of employers' rules regarding sick leave and absence. The claimant can also make judgments on simple work-related decisions. She can respond appropriately to supervision, coworkers, and work situations and deal with changes within a routine work setting. Incidental contact with the public is not precluded.**

AR 13 (emphasis in original). Plaintiff argues the ALJ's RFC assessment is inaccurate, because it does not address her difficulties in handling criticism from co-workers or the impact her panic attacks would have on her ability to maintain sustained employment. While it is unclear whether the ALJ would be required to adopt such limitations, because, as discussed above, the ALJ erred in evaluating the medical evidence in the record regarding her mental functional limitations, it is also not at all clear the above RFC assessment is supported by substantial evidence. Remand for further re-consideration of that assessment therefore is appropriate.

Plaintiff also argues the ALJ was required to further develop the record by requesting all of the IQ scores obtained by Dr. Covell, given that an IQ of 70 or less could result in a finding of disability. An ALJ has the duty "to fully and fairly develop the record and to assure that the claimant's interests are considered." <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1150 (9th Cir. 2001) (citations omitted). However, it is only where evidence is ambiguous or the ALJ has found that "the record is inadequate to allow for proper evaluation of the evidence," that the ALJ's duty to "conduct an appropriate inquiry" is triggered. <u>Id.</u> (citations omitted); <u>Mayes v. Massanari</u>, 276 F.3d 453, 459 (9th Cir. 2001). Such is not the case here. Specifically, nothing in the medical evidence in the record, including Dr. Covell's own evaluation report, indicates plaintiff has been

ORDER - 18

assessed with an IQ score of 70 or less.[6]  Thus, the ALJ did not err on this basis.

Plaintiff argues as well that the ALJ erred in not including in his assessment of her RFC the moderate limitations in concentration, persistence or pace the ALJ found at step three of the sequential disability evaluation process. See AR 12.  Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 416.920.  At step two thereof, the ALJ must determine if an impairment is "severe." Id.  At step three of the evaluation process, the ALJ must evaluate the claimant's impairments to see if they meet or medically equal any of the impairments listed in 20 C.F. R. Part 404, Subpart P, Appendix 1 (the "Listings"). See 20 C.F.R § 404.1520(d); Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).  The Social Security Regulations provide in relevant part:

> . . . After we rate the degree of functional limitation resulting from your impairment(s), we will determine the severity of your mental impairment(s).
>
> (1) If we rate the degree of your limitation in the first three functional areas [of activities of daily living, social functioning and concentration, persistence or pace (see 20 C.F.R. § 404.1520a(c)(3)] as "none" or "mild" and "none" in the fourth area [of episodes of decompensation (see id.)], we will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities [(see § 404.1521)].
>
> (2) If your mental impairment(s) is severe, we must then determine if it meets or is equivalent in severity to a listed mental disorder.  We do this by comparing the medical findings about your impairment(s) and the rating of the degree of functional limitation to the criteria of the appropriate listed mental disorder.  We will record the presence or absence of the criteria and the rating of the degree of functional limitation on a standard document at the initial and reconsideration levels of the administrative review process, or in the decision at the administrative law judge hearing and Appeals Council levels (in cases in which the Appeals Council issues a decision). . . .

---

[6] Indeed, Dr. Covell expressly found that while the results of her assessment "suggested mild cognitive limitations in several areas," those results were "likely an inaccurate reflection of [plaintiff's] actual ability due to . . . poor effort," and her cognitive ability was "likely higher than her test results indicate[d]." AR 431.

> (3) If we find that you have a severe mental impairment(s) that neither meets nor is equivalent in severity to any listing, we will then assess your residual functional capacity.

20 C.F.R. § 416.920a(d). Nothing in this language requires the ALJ to include moderate mental functional limitations in the RFC assessment, even though moderate limitations may be found in the functional domains considered at steps two and three of the sequential disability evaluation process. Simply, the determinations at step two and step three are separate and distinct from the residual functional capacity assessment employed at steps four and five. Indeed, SSR 96-8p, expressly provides in relevant part:

> . . . The psychiatric review technique described in . . . [20 C.F.R. § 404.1520a] . . . requires adjudicators to assess an individual's limitations and restrictions from a mental impairment(s) in [the four functional areas noted above in § 404.1520a(c)(3), known also as the "paragraph B" criteria]. The adjudicator must remember that the limitations identified in the "paragraph B" . . . criteria are *not* an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential [disability] evaluation process. The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process *requires a more detailed assessment* by itemizing various functions contained in the broad categories found in [the "paragraph B" criteria].

1996 WL 374184 *4 (emphasis added). Accordingly, the ALJ was not required to include in his assessment of plaintiff's residual functional capacity moderate limitations in social functioning or in concentration, persistence or pace, merely because he determined that moderate difficulties existed in those areas at steps two and three.

V.    The ALJ's Findings at Step Five

If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. See Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 404.1520(d), (e). The ALJ can do this through the testimony of a vocational expert or by reference to defendant's Medical-Vocational Guidelines (the "Grids"). Tackett, 180

ORDER - 20

F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).

An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. See Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. See Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988). Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record." Id. (citations omitted). The ALJ, however, may omit from that description those limitations he or she finds do not exist. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

At the hearing, the ALJ posed a hypothetical question to the vocational expert containing substantially the same limitations as were included in the ALJ's assessment of plaintiff's residual functional capacity. See AR 85-86. In response thereto, the vocational expert testified that an individual with those limitations – and who had the same age, education and work background as plaintiff – would be able to perform other work. See AR 86-87. Based on the vocational expert's testimony, the ALJ found plaintiff to be capable of performing other jobs existing in significant numbers in the national economy. See AR 17-18. Plaintiff argues, and the Court agrees, that the ALJ's step five determination here cannot be upheld, because the hypothetical question posed by the ALJ was based on a defective RFC assessment, which in turn was based at least in part on an improper evaluation of the medical evidence in the record.

VI.     This Matter Should Be Remanded for Further Administrative Proceedings

The Court may remand this case "either for additional evidence and findings or to award benefits." Smolen, 80 F.3d at 1292. Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional

ORDER - 21

investigation or explanation." <u>Benecke v. Barnhart</u>, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." <u>Id.</u>

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." <u>Smolen</u>, 80 F.3d at 1292; <u>Holohan v. Massanari</u>, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

<u>Smolen</u>, 80 F.3d 1273 at 1292; <u>McCartey v. Massanari</u>, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Because issues still remain in regard to the medical evidence in the record concerning plaintiff's mental impairments and limitations, her residual functional capacity and her ability to perform other jobs existing in significant numbers in the national economy, it is appropriate to remand this matter to defendant for further administrative proceedings.

Plaintiff argues the opinions of Dr. Covell and Dr. Oyemaja should be credited as true. It is true that where the ALJ has failed "to provide adequate reasons for rejecting the opinion of a treating or examining physician," that opinion generally is credited "as a matter of law." <u>Lester</u>, 81 F.3d at 834 (citation omitted). However, where the ALJ is not required to find the claimant disabled on crediting of evidence, this constitutes an outstanding issue that must be resolved, and thus the Smolen test will not be found to have been met. <u>See</u> <u>Bunnell v. Barnhart</u>, 336 F.3d 1112, 1116 (9th Cir. 2003). Further, "[i]n cases where the vocational expert has failed to address a

1    claimant's limitations as established by improperly discredited evidence," the Ninth Circuit

2    "consistently [has] remanded for further proceedings rather than payment of benefits." <u>Bunnell</u>,

3    336 F.3d at 1116.

4        Here, as discussed above, there are issues with plaintiff's credibility. Nor is it clear that

5    the ALJ would be required to adopt all of the mental functional limitations found by Dr. Covell

6    and Dr. Oyemaja, particularly given that the limitations those physicians found are not entirely

7    consistent with each other. <u>See</u> AR 334-42, 422-35. In addition, the testimony of the vocational

8    expert did not address – or at least did not completely address – the mental functional limitations

9    established by the improperly discredited medical evidence. <u>See</u> AR 87-88. The Court therefore

10   declines to grant plaintiff's request to credit as true Dr. Covell's and Dr. Oyemaja's.

11       Plaintiff further requests that the Court remand this case as well for the limited purpose of

12   determining whether her prior applications should be re-opened on the basis of Dr. Covell's and

13   Dr. Oyemaja's opinions. While the Court finds no cause at this time for remanding this matter

14   on the basis of their opinions – indeed, although plaintiff argues those opinions constitute "new

15   and material" evidence making remand based on that evidence appropriate, she fails to explain

16   how it meets that standard – should it be determined on remand that such an inquiry is warranted,

17   defendant shall do so. Lastly, plaintiff requests that the Court order defendant to obtain her IQ

18   scores as discussed above, as well as a supplemental psychological examination. Again, though,

19   the Court declines to do so, as plaintiff has not demonstrated such are needed at this time. Once

20   more, however, should it be determined on remand that obtaining such additional evidence is

21   warranted, then defendant shall do so.

22                                        CONCLUSION

23       Based on the foregoing discussion, the Court finds the ALJ improperly found plaintiff to

ORDER - 23

be not disabled.  Accordingly, the Court hereby reverses the defendant's decision to deny

benefits, and remands this matter for further administrative proceedings in accordance with the

findings contained herein.

DATED this 28th day of July, 2011.


Karen L. Strombom
United States Magistrate Judge

ORDER - 24